IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2019 Term

_____

No. 18-1077

_____

**FILED**
**November 20, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

HEATHER M.,
Plaintiff Below, Petitioner

v.

RICHARD R.,
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Charles E. King, Jr.
Case No. 18-D-563

REVERSED AND REMANDED WITH INSTRUCTIONS
_____

Submitted: November 6, 2019
Filed: November 20, 2019

Maureen Conley, Esq.                          Respondent Richard R.
Legal Aid of West Virginia                    Pro se
Charleston, West Virginia
Counsel for Petitioner Heather M.

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard.  We review questions of law *de novo*."  Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

WALKER, Chief Justice:

  Heather M.[1] and Richard R. lived together with their two shared biological children, A.R. and E.R.  Eventually, Heather accused Richard of verbally and physically abusing her and the children, the two separated, and she petitioned the Family Court of Kanawha County for allocation of custodial responsibility.  During two different hearings, the family court refused Heather's efforts — first on a pro se basis and later by counsel — to present evidence of Richard's alleged abuse.  The family court rejected Heather's request for Richard's custodial time to be supervised and also allocated the income tax exemptions for the dependent children solely to Richard, with the option for Heather to claim one exemption in future years if she first obtained employment.  After the circuit court denied her appeal, Heather sought relief in this Court.  Richard did not file a response.

  Because we find that the family court abused its discretion by refusing to permit Heather to present evidence relating to alleged abuse by Richard, we reverse the family court's order and remand with instructions to hear such evidence and determine whether, under Rule 48 of the Rules of Practice and Procedure for Family Court, this case should be referred to circuit court for abuse and neglect proceedings.  And, we reverse the family court's order regarding the income tax exemption and remand with instructions that

---

[1] Consistent with our practice in cases involving sensitive facts, we identify the parties by initials only.  *See In re Jeffrey R.L.*, 190 W. Va. 24, 26 n.1, 435 S.E.2d 162, 164 n.1 (1993).

the family court award the exemption for both children to Heather unless any of the exceptions in West Virginia Code § 48-13-801 are satisfied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Heather and Richard lived together with two shared biological children, A.R. and E.R, but were never married. In May 2018, before the parties ended their relationship, Heather petitioned the Family Court of Kanawha County for allocation of custody of the two children. In the proposed parenting plan, Heather sought to limit Richard's custodial time with the children, stating, "I do not want my girls to be left alone with Richard because he has been verbal [sic] and physically abusive. He has screamed and hit both girls. My oldest is scared of him and my youngest is sometimes." In this first petition, Heather failed to indicate whether she requested supervised visitation of Richard's time with the children.[2]

At the time Heather filed her petition for custody allocation, she and Richard still resided in the same home. By the time of the temporary custody hearing on June 25, 2018, Richard had been out of the home for three weeks. As the parties, who appeared pro se, explained during the hearing,[3] Heather initially asked Richard to return to their joint

---

[2] Heather later filed an amended petition in which she properly indicated that she sought supervised visitation.

[3] The transcripts submitted to this Court on appeal are unofficial transcripts prepared by a transcriptionist from audio recordings of the underlying proceedings. Neither party has challenged the accuracy of these transcripts, and our review of the audio recordings of the underlying proceedings revealed them to be accurate. *See* Rule 9(c) of the W. Va.

2

home so that the two could attend therapy sessions because Richard has "a lot of anger issues" toward her and the children. Richard declined to do so, resulting in Heather's request for supervised visitation. Richard explained that he declined to return to their home because: (1) it was not financially feasible due to his long working hours, commuting time, household chores, and a pre-existing child support obligation;[4] and (2) he and Heather were "at each other's throats" and that was unlikely to change in the foreseeable future.

During the hearing, the family court judge asked if Heather agreed that the two were "at each other's throats[.]" Heather explained that the two argued, but not in front of the children, except that A.R. would occasionally eavesdrop on the stairs while the parents argued. The family court judge responded, "[b]ut you've allowed it to happen. [. . .] Yeah. You've both done it together [. . .] but you want him punished for it." Heather attempted to explain that her concern was not about the arguments but about "the way he's treated my girls." The following exchange then occurred:

> JUDGE: Okay. So, when did he supposedly – when did he start treating the girls bad?
>
> HEATHER: I don't know. I don't know.
>
> JUDGE: No, no – tell me.
>
> HEATHER: It's been years.

---

Rules of App. Proc. (giving the Court discretion if procedural requirements for transcript requests are not followed).

[4] The referenced child support obligation was in relation to a child from a previous relationship.

JUDGE:     Okay.  You know what?  Then you allowed it.

[. . .]

JUDGE:     So, now you want me to punish him and not let him see his kids because you let it be like that for nine years and it sounds to me like you've caused a lot of the problems as well.  So, if he was such a horrible person, maybe I should put them in State custody?  Because if you've allowed it, if you've allowed such a horrible situation to exist for nine years, the State can take your children for that.  So, if you've allowed it to exist and he's such a horrible person, and such a horrible dad, then you've let it exist for nine years.  And you just told me you wanted him to come home.

The family court judge then stated that because Heather had invited Richard to return home, then "he's clearly not that . . . bad of a guy.  So, I'm not going to, I'm not going to grant him, I'm not going to grant him supervised time."  The judge precluded any further testimony on the supervised visitation matter at the temporary hearing and the parties agreed that Richard would have visitation with the children every Saturday from 9:00 a.m. to 6:00 p.m.  The family court judge then made the following statement:

I can make [the custody allocation] final today unless you all would like to come back and put on, you know, all of your evidence of why he shouldn't have any time, or whether you should have more time, or whatever.

Heather indicated that she wished to come back with a lawyer at the final hearing to further discuss the custodial allocation and the judge agreed.

Before the final hearing, Heather, now by counsel, filed an Amended Parenting Plan in which she stated, "[Richard] has been physically and mentally abusive

4

to my girls and I [sic]."[5]  Also in the interim, Heather filed a motion to present testimony from the children's pediatrician and A.R.'s counselor at the final hearing.

At the final hearing on September 5, 2018, Heather was represented by counsel and Richard again appeared pro se.  Early in the proceeding, Richard requested that the court move visitation from Saturdays to Sundays to accommodate his and the children's schedules.  Heather did not object to this change, but her counsel reminded the court that it still needed to address the matter of supervised visitation.  Counsel also noted that A.R. suffered from anxiety issues and that A.R.'s pediatrician had been subpoenaed to testify by phone.

Notably, before the court could address the supervised visitation issue, Richard interjected to remind the court that Heather had invited him to return to their joint home.  Heather acknowledged that this was true and the following exchange occurred:

> JUDGE: Okay, so you obviously don't think he's a danger to your kids.
>
> HEATHER: That is not true.
>
> JUDGE: Well, yes it is.  If you asked him to come home–
>
> HEATHER: May I explain?

---

[5] Heather properly checked the box requesting supervised visitation in this Amended Parenting Plan filing.

> JUDGE: No you cannot. Because if you asked him to come home and live in the home with you, then I don't think you think one little bit that he's a danger to your children.
>
> HEATHER: I do.
>
> JUDGE: No, you don't, or you wouldn't have asked him to come home.

Heather's counsel also attempted to address this issue, but the judge interrupted her, stating, "If she asked him to come home, she doesn't get to sit here and say how mean and abusive he is. Because if that's true, then you're not a very good mother for asking him to come home." Heather once again attempted to explain that she invited Richard home in an effort to supervise his behavior around the children, stating that she "was prepared to be miserable for the rest of [her] life [. . .] [a]s long as [she] knew where [her] kids were." The judge then foreclosed Heather from explaining any further and stated that she was not going to order supervised visitation. Heather's counsel reminded the court that photographs of alleged abuse had been submitted, but the judge interrupted, stating:

> JUDGE: Well, [counsel], I took a whole bunch of testimony at the last hearing from both of them. I'm not re – I'm not going to rehash it. They both testified at the last hearing and she said he was abusive, he said they fought a lot, so, I mean, we were here for a while and I did take some testimony from them. [. . .]

The judge then admonished Heather, stating that if she was concerned about the children's well-being, they should be in counseling. Heather stated that A.R. had been in counseling for about a year and her counsel again noted that she had subpoenaed the

6

counselor. The judge replied, "[o]kay, hang on a sec – so the child's had issues for an entire year, not just because [Richard's] been gone in this, and been getting parenting time on just weekends." Heather stated that A.R.'s anxiety-related symptoms had resurfaced once visitation started. Richard interjected that all of A.R.'s anxiety is "blamed on [him]" even though she also suffers from anxiety about other traumatic scenarios. The judge prevented any further testimony on this point, reiterating that "[t]he child already had anxiety issues. I'm not blaming that on [Richard]."

Heather's counsel then directed the court's attention to the allocation of the child tax credit exemption, noting that if Heather were to become employed, she should be awarded the credit. The judge foreclosed evidence on the tax matter and stated she would probably not allocate both tax credits to Heather "based on the fact of how much child support [Richard] is paying." The judge opined that if Heather were to obtain employment, she would allocate the credit for one child to each parent. Counsel reminded the court that, under West Virginia Code § 48-13-801, preference for allocation of the credit is given to the custodial parent. The judge responded, "I understand. And I have discretion to do it otherwise. And, based upon that, she's not working. And she's getting a thousand dollars a month in child support."

At the end of the hearing, Heather's counsel renewed her request that the court hear testimony from the children's pediatrician to discuss the abuse allegations. The judge declined to take this testimony, stating:

JUDGE: She's a pediatrician. You know, she's not the one who's seeing the child for counseling. I don't think the pediatrician can weigh in very much. The child, mom reports the child has anxiety. Pediatrician sees the child for five minutes. I don't think a pediatrician can weigh much in [sic] on that. The person that should be, you know, that should weigh in the most would be the counselor. But the child's had anxiety for a year. It's not new because [Richard's] seeing the child on Saturdays. [. . .] For eight hours. [Heather] if you think I believe that you are incorrect. Your child's had anxiety for a year. This is not because of him, and again, and, then to sit there and be, you're away from him, and then to say, I want him back, but yet he's such an awful father. I don't, I think that's unfair. I think that's absolutely unfair.

The family court entered its Final Order on Custodial Responsibility, Etc. on September 27, 2018. This order granted the parties shared decision-making for the two children, granted Heather primary custodial responsibility, granted unsupervised visitation to Richard every Sunday from 9:00 a.m. to 5:00 p.m., and awarded the income tax dependency exemptions for both children to Richard. Heather appealed this order to the Circuit Court of Kanawha County. The circuit court denied that appeal without addressing any of the underlying assignments of error. The appeal to this Court followed.

During the pendency of the appeal to this Court, Heather informed this Court of new developments. On July 8, 2019, Heather filed a Petition for Protective Order alleging that on or about June 6, 2019, A.R. disclosed potential sexual abuse by Richard. Heather took A.R. to her pediatrician and therapist, and A.R. repeated the disclosure to each of them. Heather met with a police officer, the Child Advocacy Center, and Child

8

Protective Services (CPS), all of whom recommended she file the petition for protective order. On August 7, 2019, the family court entered a 180-day protective order and referred the matter to circuit court for further investigation. It is unclear from the limited information in the record whether an abuse and neglect petition was filed under Chapter 49 of the West Virginia Code. On September 5, 2019, the Circuit Court of Kanawha County dismissed and remanded the matter to family court, noting "the investigation does warrant further action by the DHHR and that the family court has taken appropriate measures to ensure the Infants' safety."

## II. STANDARD OF REVIEW

In reviewing orders of a family court on appeal, we apply a multi-layered standard of review:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.[6]

> With this standard in mind, we address the errors assigned by Heather.

## III. DISCUSSION

Heather identifies three errors to this Court on appeal. First, she argues that the family court abused its discretion by refusing to permit her to present witness testimony

---

[6] Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

9

and other evidence that would have supported the placement of limitations on Richard's custodial time and decision-making responsibilities. Second, she argues that her due process rights to a fair hearing and a fair opportunity to present evidence were violated by this refusal. Finally, she contends that the family court abused its discretion in refusing to award the child tax credit exemption for both children to her. Richard filed no response with this Court. As such, we address each of Heather's arguments in turn.

### A. *Refusal to Permit Presentation of Evidence*

At the outset, we note that in her initial family court filings, in her amended filings, and in the transcripts of both hearings, Heather has consistently alleged that Richard was abusive to both her and the children. In her original petition, Heather stated, "I do not want my girls to be left alone with Richard because he has been verbal [sic] and physically abusive. He has screamed and hit both girls." Heather also proffered evidence and sought to admit testimony to support the imposition of limitations on Richard's custodial time. At the final hearing, Heather's counsel repeatedly brought this to the family court's attention, but at every turn, the family court declined to hear any evidence on the matter. Heather argues that the family court's refusal to take evidence was an abuse of discretion. We agree.

We have little trouble determining that the family court abused its discretion in refusing Heather's repeated attempts to introduce evidence relevant to the allegations of abuse. West Virginia Code § 48-9-209 governs the placement of limitations upon a

10

parent's custodial time and sets forth the following mandate: "If either of the parents so requests, or upon receipt of credible information thereof, the court *shall* determine whether a parent who would otherwise be allocated responsibility under a parenting plan: (1) Has abused, neglected or abandoned a child, as defined by state law[.]"[7] While we acknowledge that some statutory provisions in Chapter 48 of the West Virginia Code give a family court discretion in its decision to investigate matters of abuse and neglect, this is not one of those provisions.[8]

---

[7] Emphasis added.

[8] Specifically, we note that West Virginia Code § 48-9-201(b) states:

> The court, at its discretion and on any basis it deems sufficient, may conduct an evidentiary hearing to determine whether there is a factual basis for a finding under subdivision (1) or (2), subsection (a) of this section. When there is credible information that child abuse as defined by section 49-1-3 [§ 49-1-3] of this code or domestic violence as defined by section 27-202 [§ 48-27-202] of this code has occurred, a hearing is mandatory and if the court determines that abuse has occurred, appropriate protective measures shall be ordered.

W. Va. Code § 48-9-205(b) states:

> The court shall develop a process to identify cases in which there is credible information that child abuse or neglect, as defined in section three [§ 49-1-3], article one chapter forty-nine of this code [. . .] has occurred. [. . .] The process shall also include a system for ensuring that jointly submitted parenting plans that are filed in cases in which there is credible information that child abuse or domestic abuse has occurred receive the court review that is mandated by subsection (b), section two hundred one [§ 48-9-201] of this article.

Clearly, Heather made a request to place limitations—in the form of supervised visitation—on Richard's custodial time with the children. While we acknowledge that Heather's original petition did not explicitly seek this limitation, we note that she immediately made the request at the temporary custody hearing. When the family court asked if Heather knew what she wanted Richard's custodial time to be, Heather responded

> "I would like to see supervised visitation because I asked him to come home and do therapy with me. He has a lot of anger issues – [. . .] [t]owards me, towards the girls. And that was completely out of the question. He refused to do that, so I would love to see supervised visitation if that's possible."

And, after the temporary custody hearing, Heather retained counsel and filed an amended petition in which she appropriately requested that Richard's custodial time be

---

And West Virginia Code § 48-9-301a states:

> If allegations of child abuse are made during a child custody proceeding and the court has concerns regarding the child's safety, the court may take any reasonable, temporary steps as the court, in its discretion, deems appropriate under the circumstances to protect the child's safety until an investigation can be completed.

These code sections each involve some discretion on the part of the family court, whether that is discretion to open an investigation, discretion to determine if credible evidence justifies opening an investigation, or to discern that credible allegations of abuse have been made. West Virginia Code § 48-9-209 does not involve discretion in choosing to open an investigation. The language is explicit that upon request of a parent, the family "court *shall* determine whether a parent who would otherwise be allocated responsibility under a parenting plan [. . .] [h]as abused, neglected or abandoned a child, as defined by state law[.]" (emphasis added). Therefore, the family court was required to open such an investigation here for purposes of determining whether these children had been abused.

12

supervised.   As such, under § 48-9-209, we conclude that Heather requested a determination of whether Richard had abused or neglected the children under state law. So, based on the plain language of the statute, the family court was required to undertake such an investigation, and that investigation inherently required the taking of at least some evidence.  As explained further below, the family court refused to take any evidence.  We find that was an abuse of discretion.

In addition to both her oral requests for limitations on Richard's visits and her amended petition, Heather proffered pertinent evidence and sought to introduce testimony from medical professionals familiar with the abuse allegations.  Yet, the family court still refused to take evidence on this matter, offering several explanations for that refusal.  At the temporary custody hearing, the family court asked whether the parties would like to return for a final hearing in order to "put on, you know, all of [their] evidence of why [Richard] shouldn't have any time, or whether [Heather] should have more time, or whatever."  However, at that final hearing, the judge again refused to hear any evidence, stating:

> "[. . .] I took a whole bunch of testimony at the last hearing from both of them.  I'm not re – I'm not going to rehash it. They both testified at the last hearing and she said he was abusive, he said they fought a lot, so, I mean, we were here for a while and I did take some testimony from them."

Our review of the record reveals that the family court did not take any substantial evidence on the issue of abuse and neglect at the temporary custody hearing.  Instead, while the majority of the eighteen-minute hearing was devoted to custody allocation, a significant

13

portion of that was dominated by the family court judge's efforts to discount Heather's concerns about the children's safety and to admonish her for failing to remove her children from the home sooner if she believed it to be an abusive environment.

At both the temporary and final hearings, the family court judge focused heavily upon testimony from Richard that Heather had invited him to return home. This, according to the family court, was evidence that Heather did not believe Richard to be a danger to the children and negated any need to investigate the matter further. But the hearing transcripts show that Heather had not only disclosed this issue to the family court at the temporary custody hearing, but also that she attempted to explain her reasoning for inviting Richard home. And while the family court foreclosed Heather from making any explanation, the record reflects that Heather, in the absence of court-ordered supervised visitation, sought to supervise Richard's interactions with the children herself. The family court's focus on the single fact of Heather inviting Richard home, to the exclusion of any other evidence or explanation, overlooked proffered evidence on the matter of abuse. While we do not determine whether Heather's explanation is truthful or sufficient, we can say with certainty that the family court should have heard and weighed it with or against other relevant evidence.

And, when Heather attempted to present telephonic testimony from A.R.'s pediatrician, the family court judge refused, determining that the pediatrician would not have enough familiarity with the alleged abuse to testify with any authority. The family

court judge also stated that if Heather believed A.R. to be suffering from anxiety, Heather should have taken her to a counselor. But when Heather responded that A.R. had a counselor who had also been subpoenaed to testify, the family court judge once again refused testimony, concluding that, because A.R. had been seeing the counselor for more than a year, visitation with Richard could not have been the source of A.R.'s anxiety. Heather proffered a medical report from A.R.'s pediatrician noting that A.R. was suffering from increased symptoms of anxiety as a result of her visitation with Richard and detailing several disclosures A.R. made relating to potentially abusive experiences. That report clearly contradicts the family court's conclusion that A.R.'s visits with Richard were not causing or exacerbating her anxiety.

As noted above, the hearing of evidence is a necessary part of undertaking an investigation under West Virginia Code § 48-9-209. So, parties must be permitted to testify or present testimony of other witnesses to be considered in determining whether a child had been abused or neglected for purposes of placing limiting factors on custodial time. Here, the family court refused to permit Heather to testify or present testimony from other witnesses on the abuse allegations. It is apparent, based on the record before us, that the family court abused its discretion in refusing to take testimony on a matter of such paramount importance as an allegation of abuse and neglect. These errors endangered children whom our court system has a duty to protect. A court cannot presume to know the facts of a case, the character of a party, or the authority of a potential witness without

15

having heard any evidence. We cannot escape the conclusion that the family court failed in its protective role with regard to the children in this case.

It is not the province of this Court to investigate the veracity of Heather's allegations of abuse, and we do not do so here. That said, Rule 48(a) of the Rules of Practice and Procedure for Family Court mandates that when the family court "has reasonable cause to suspect any minor child involved in family court proceedings has been abused or neglected, that family court shall immediately report the suspected abuse or neglect to the state child protective services agency . . . and the circuit court." Based on the failure to comply with the investigatory provisions of West Virginia Code § 48-9-209, we have a limited record before us on appeal, and, for that reason, are unable to determine whether the original abuse allegations in Heather's initial filings warranted referral to the circuit court and the requisite child protective services agency.[9] As such, we reverse the family court's custodial order and remand this matter to the family court to allow presentation of all relevant and permissible evidence related to those original allegations so that the family court may determine whether referral to the circuit court is appropriate. And, because of the apparent danger present to the children in this matter, we remand with

---

[9] The allegations of abuse that arose after the filing of this appeal were noticed to this Court in an updated filing. As a result, our knowledge with regard to those subsequent allegations is also extremely limited, and we are without sufficient information to determine whether an abuse and neglect petition has been filed. So, we remand this matter to family court in the manner directed, but also remind the family court and circuit court of the jurisdictional parameters of Rule 48(d) of the Rules of Practice and Procedure for Family Court.

16

instructions that the family court order, upon expiration of the domestic violence protection order,[10] that any visitation Richard has with the children be supervised pending the resolution of any ensuing abuse and neglect proceedings.[11]

## B.      *The Dependent Child Tax Exemption*

Heather also argues that the family court erred in failing to allocate to her the dependent child tax exemption for both A.R. and E.R.  The family court reasoned that because Heather was unemployed, the tax exemption would be of no benefit to her, and therefore awarded the exemptions for both children to Richard for the 2018 tax year.  The family court also ordered that, upon Heather's future employment, each parent could claim one child tax exemption from 2019 forward.  We find that the family court erred in so ordering because our law presumes that the exemption be awarded to the custodial parent.  While that presumption may be rebutted, it was not rebutted at the hearings below.

West Virginia Code § 48-13-801 governs the allocation of the dependent child tax exemption.  It states:

> Unless otherwise agreed to by the parties, the court shall allocate the right to claim dependent children for income tax purposes to the payee parent except in cases of extended shared parenting.  In extended shared parenting cases, these rights shall be allocated between the parties in proportion to their

---

[10] That order was entered on August 7, 2019.  It is set to expire on February 3, 2020.

[11] Because we find a clear abuse of discretion in the family court's failure to take evidence, we need not address Heather's due process claims, which depend on the same factual basis.

adjusted gross incomes for child support calculations. In a situation where allocation would be of no tax benefit to a party, the court need make no allocation to that party. However, the tax exemptions for the minor child or children should be granted to the payor parent only if the total of the payee parent's income and child support is greater when the exemption is awarded to the payor parent.

In *Eric M. v. Laura M.*,[12] we explained, that as to the final sentence of the statute, that the court must examine the net financial effect *on the child* of the exemption's allocation to either party. Specifically, we focused on determining which allocation would yield a greater post-tax spendable income for the family as a whole.[13]

Here, we begin with the presumption under § 48-13-801 that the custodial parent be awarded the ability to claim the child as a dependent. Heather is the custodial parent, and is entitled to claim the tax credits for both children unless Richard can rebut that presumption in one of three ways: (1) by showing that an extended shared parenting situation exists; (2) by showing that the tax credits would be of no benefit to Heather; or (3) by showing that Heather's income and child support would be greater if Richard were awarded the credits.

Two of the three statutory exceptions to the statutory presumption are inapplicable here. First, this is not a case of extended shared parenting. West Virginia

---

[12] 237 W. Va. 709, 712, 790 S.E.2d 929, 932 (2016) (citing *Spence v. Spence*, 199 W. Va. 609, 486 S.E.2d 778 (1997)).

[13] *Id.*

Code § 48-13-501 defines that term to mean that "each parent has the child for more than one hundred twenty-seven days per year (thirty-five percent)." Under the family court's custody allocation, Richard would have the children for far less time than that.

Turning to the second exception, we determine that Heather would benefit from the exemption for both children. At the final hearing, the family court operated under an erroneous assumption that the exemption would only benefit Heather if she were employed, presumably operating under the guidance of a 2016 memorandum decision, *Gladys J. v. Ronnie J.*[14] In that case, an unemployed mother invoked § 48-13-801 and asserted that she had a right to claim the exemption.[15] The father disagreed, arguing that it would be of no benefit to the mother due to her unemployment.[16] We remanded that matter to the family court for further consideration on the ground that the family court performed no analysis of the allocation of the tax benefits to either party, but stated that we "[did] not disagree with the family court's decision to allow the husband to claim the children as dependents for tax purposes because the wife was not employed."[17] But, amendments to

---

[14] No. 15-0191, 2016 WL 3165981 (W. Va. June 3, 2016).

[15] *Id.* at *6.

[16] *Id.*

[17] *Id.*

19

the Internal Revenue Code the year following our decision in *Gladys J.* materially alter the analysis of West Virginia Code § 48-13-801.

In 2017, the United States Congress passed the Tax Cuts and Jobs Act of 2017 (TCJA) which amended the United States Internal Revenue Code.[18] The TCJA eliminated personal exemptions, including dependent exemptions for the 2018 through 2025 tax years, meaning that the exemptions still exist as a matter of law, but they are without value as deductions.[19] But, the TCJA retained the definition of "dependent" for purposes of the child tax credit.[20] Specifically, these changes modified the child tax *credit* to make it partially refundable.[21] The dependent child tax exemption and the child tax credit work in tandem, meaning that the parent who wishes to claim the credit must also claim the child as a dependent.[22] Therefore, award of the right to claim the dependent child tax exemption directly controls who receives the additional child tax credit. And, the

---

[18] 26 U.S.C. §§ 1 through -9834 (2017).

[19] 26 U.S.C. § 151(d)(5) (2017) (setting the exemption amount for each personal exemption to zero dollars for the tax years 2018 to 2025).

[20] 26 U.S.C. § 152 (2017).

[21] 26 U.S.C. § 24(d) (2017) (the credit has a maximum value of $2,000, but $1,400 of that is refundable).

[22] 26 U.S.C. § 24(a) (2017) ("There shall be allowed as a credit against the tax imposed by this chapter for the taxable year with respect to each qualifying child of the taxpayer *for which the taxpayer is allowed a deduction . . .*") (emphasis added).

additional child tax credit is refundable even when the claimant has no tax burden.[23]  So, employment no longer is a prerequisite to obtaining some benefit from the allocation of the child tax credit, and therefore, the dependent child tax exemption.  In this case, even though Heather is unemployed and has no tax burden, allocation of the credits would benefit her in that claiming the children as dependents would permit her to recoup the full refundable amount of the additional child tax credit per child.

The third statutory exception provides that the court may award the tax credit to the noncustodial parent "if the total of the [custodial] parent's income and child support is greater when the exemption is awarded to the [noncustodial parent]."  As noted above, *Eric M.* requires that a court examine the net financial effect allocation to either parent would have upon the children.  We cannot accurately perform this analysis because the parties in this case failed to submit updated financial records that would allow us to do so.  Therefore, we do not decide whether the third exception in § 48-13-801 would permit allocation of either of the child tax benefits to Richard, but leave that determination to the family court on remand.

So, we reverse the family court's order with regard to the dependent child tax exemption allocation and remand this issue to the family court for a proper analysis under *Eric M.* of the financial impact allocation of the tax benefits to either parent would

---

[23] 26 U.S.C. § 24(d)(1)(A) (2017).  *See also,* U.S. Dep't of the Treasury, Internal Revenue Service, Pub. 972, Child Tax Credit (2018).

21

have on the children. We further instruct that the family court award the dependency allocation for both children to the custodial parent unless any of the exceptions in West Virginia Code § 48-13-801 are satisfied.

## IV. CONCLUSION

We conclude that the Circuit Court of Kanawha County erred in denying the underlying appeal, and therefore, reverse the circuit court's order dated October 29, 2018. We reverse the September 27, 2018, order of the Family Court of Kanawha County with respect to both the custodial allocation and the allocation of the dependent child tax exemption and remand this matter to the family court with the following instructions: (1) that the family court order, upon expiration of the August 7, 2019, domestic violence protection order, that any visitation Richard has with the children be supervised pending resolution of any abuse and neglect proceeding which results from this remand; and (2) that, unless Richard successfully rebuts the presumption that the tax exemptions be awarded to the custodial parent under West Virginia Code § 48-13-801 by showing that Heather's income and child support would be greater if Richard were awarded the exemptions, the exemptions for both children be awarded to Heather.

Reversed and remanded with instructions.

22